Case number 14-3413, Raymond Smith v. Margaret Bagley. Argument not to exceed 15 minutes per side. Mr. Rossman, you may proceed for the appellant. Thank you. May it please the court, I would like to reserve three minutes of rebuttal time, if that's okay. Thank you. Judge McKee, can you hear? Yes, I can. Thank you, Judge Trant. Everything is fine. Good morning. My name is Alan Rossman and I represent Mr. Raymond Smith. This case began as a capital case. Mr. Smith was sentenced to death row, but he was adjudicated to be intellectually disabled under Atkins following a full state court hearing. This is one of the rare occasions when the state of Ohio did not pursue the appeal of that decision. Mr. Smith is now serving a life sentence. Like many cases where the defendant is mentally retarded, there were several other co-conspirators. The state's main witness, the only state's witness present during the homicide, was his son, Michael. Five months before trial, the state successfully sought to take his deposition. The deposition was presented unredacted to the jury for consideration when Michael Smith did not appear for trial. This morning, I would like to argue that habeas relief is warranted under the Confrontation Clause. At the time of Mr. Smith's November 1995 trial and appeal, the clearly established federal law was Ohio v. Roberts. The Attorney General concurs in this, as did the district court. Under Roberts, there is a clearly established two-prong test, and this morning I want to address Roberts' first prong and argue that Mr. Smith is entitled to a remand in order to have it determined in the first instance whether or not Michael Smith's absence from trial was occasioned by the Lorain County Prosecutor and Detective Leiby such that Michael Smith was not constitutionally unavailable under Roberts. As Roberts and this circuit precedent make clear, if Michael Smith was not constitutionally unavailable, the court must consider a grant of habeas relief. Does it make a difference, Counselor, that many of the cases you cite regard a true co-conspirator, co-defendant, and in this case Michael Smith was not charged? It does not, Judge. Why not? It seems to me that there's a difference if someone is actually a charged co-conspirator. Your Honor, if someone is a charged co-conspirator, then arguably, assuming that witness was unavailable and you got to the reliability, you could legitimately argue that there's lots of precedent to suggest that co-conspirators' testimony should be regarded with skepticism. As far as the Confrontation Clause goes, it does not matter whether it's a co-conspirator. We're talking about the right to confront your accuser and that the government, as a preliminary showing, must show good faith regardless whether it's a co-conspirator or not. In terms of, just to complete that argument, the Ohio Supreme Court, in its decision, referred to Michael as a co-conspirator, and that is a finding of fact to which, because this is a habeas case, we would naturally defer. For the argument I'm making, it makes no difference. You think that that is an actual finding of fact by the court as opposed to an appellation or a name? I do, Judge. I do. There's plenty of evidence to suggest that Michael Smith was along. When Danny Smith, in recitation of the facts, Danny Smith asked whether Michael was present. That's the only one he asked, whether he was present at the time. And I think the reference to him, they came back, there's talk about them all being together, they were all bragging, there's no distinction there. That Michael Smith wasn't charged, that Michael Smith went to the prosecutor's office within weeks of the indictments coming down, I think allows for that finding. But the specific language of the Ohio Supreme Court on direct appeal was co-conspirator. For this argument, it makes no difference because he was, as the prosecution referred to him, a critical witness in this case. I interrupted your argument on reliability. Why is this not reliable evidence in light of the fact that it was cross-examined? The short answer to that is, assuming he was constitutionally unavailable, then the court would look to Roberts, California v. Green, to engage the discussion. And let me put it this way. There's no mechanical test. The Supreme Court says there's no mechanical test for assessing the mere fact he was cross-examined is, in and of itself, not sufficient. The court looks to the scope of the examination to see, as I think Roberts said, that they're similar to the respondent in California v. Green. There were no significant limitations. And this is Roberts talking. There were no significant limitations on the scope or nature of the cross-examination, and it was afforded in the context of judicial protection. In the case of Michael Smith's deposition, there were significant limitations on the right to cross-examination. Well, the one that you argue about is his personal location. Is that the primary limitation that you're concerned about? For the first prong, in other words, as Brumley v. Wingard, as the Supreme Court makes clear, that unless if you don't find that he is constitutionally unavailable, we don't have to worry about reliability. But, yes, in state post-conviction, there was an affidavit presented from a Miss Geiger that said Michael Smith, I spoke to him because he came back several months after Mr. Smith's trial, for Danny Smith's trial. And she says, I spoke to him there, and he told me that the prosecution had sent him out to Arizona. That affidavit was presented in state post-conviction for the argument that he has a right to confront his accusers, and because the rules of state post-conviction require evidence outside the record, this was evidence outside the record. The state post-conviction trial court accepted that affidavit as substantive evidence outside the record. It should be noted that perhaps the reason the court accepted it was during the deposition itself, and the reference is Record Entry 125-2, page 6025. Michael Smith, who was on probation for robbery at the time during his deposition, was specifically asked what the incentive was for testifying at his deposition and coming forward. He was asked whether the prosecution had given him any incentive, and he said, no, all I asked for was a bus ticket out of here. So the affidavit that's presented, the Geiger affidavit, is consistent with that. So for purposes of procedural default, we look to what the state court did. The state court of appeals found this to be res judicata, which is what I wanted to address here today. And what they said in a specific finding of addressing procedural default, they said specifically this is res judicata because the petitioner in this case did not attempt to support the claim with evidence outside the record. Now clearly that's wrong. There was a telling footnote there where they said he suggested that he did submit it, the evidence, but we can't find it in the record. Now you would think perhaps that the court might have seen that reference, gone back and asked counsel or the state to provide that affidavit. But it's telling because the post-conviction trial court clearly referred to that affidavit and indicated at Record Entry 122-8, page ID 2748, that he has presented some evidence outside the record. It's also telling that in the state's response of pleading to that petition, the state acknowledged that, in fact, the defendant does offer evidence outside the record to buttress the claim. That's at Record Entry 122-8, page ID 2647. Didn't the court below look at that, though, and wasn't there a question of whether it met the standard of competent, relevant, and material? Let me say that this court has always been clear. I think Gurr v. Mitchell is one case, Gall v. Parker, that principles of comity and finality, which are so important for habeas purposes, that a habeas court is not there to revisit a state court's interpretation of state law. The reason under State v. Calhoun, the reason that the state court gives to the trial court, the post-conviction trial court, which heard the trial originally the right to assess the credibility of affidavits, is just for that reason, because the trial court is the one that actually observed the trial. So when the trial court acknowledges that affidavit as evidence outside the record, as substantive evidence, in state post-conviction, because you have a disputed issue of fact, you get an evidentiary hearing. The fact that the post-conviction trial, in other words, Judge, it's not for the habeas court to weigh the validity of that affidavit. It's for the state court to assess that and then to go forward with an evidentiary hearing to resolve the factual disputes. The post-conviction trial court has the authority to look at that affidavit and say this is not competent evidence or this is because there's hearsay. That's the right of the state post-conviction court. Well, the court of common pleas, the first post-conviction proceedings, didn't the court of common pleas dismiss the petition and address the Geiger affidavit? It addressed the claim on the merits. It dismissed the claim on the merits. And what it did was say, it acknowledged the Geiger affidavit as support for the first prong, but said you lose this claim because you haven't presented any evidence on the second prong specifically. You haven't shown that the testimony of Michael Smith would have been different had he come to trial, would have been different in the sense of helping the petitioner. Had that been the ruling that the court of appeals then adopted, then we'd be arguing a violation of clearly established federal law because that's not how you assess a confrontation clause claim. The reliability doesn't turn on showing how the declarant, who is unavailable, would have testified differently and in favor. It's about the right to confront. And Bromley v. Wingard dismisses that analysis, but the post-conviction trial court, which is the last reasoned decision under Yeltsin v. Nunnemaker, clearly dismissed this as race judicata and did not address the merits. So the argument of the post-conviction trial court was not a procedural default. It was a dismissal straight up on the merits. They used the wrong law, but because under Yeltsin we're assessing procedural default, we look to the last reasoned decision that is the court of appeals. Your red light has been on for a while. Would you summarize why you think the Geiger affidavit would be sufficient for cause? The Geiger affidavit, let me say this. The state court has never, nor has any court, resolved the issue in terms of Michael Smith's constitutional unavailability. There is evidence outside the record presented in the Geiger affidavit that the state of Ohio and the prosecutors sent him to Arizona. That is consistent with the evidence that was in the trial, that Michael Smith both asked for a bus ticket out of here, and ironically when the trial court reluctantly granted the deposition, as an example said, if I find out, if I find out that someone gave him a bus ticket and said get lost, and that's record entry 122-3, page ID 1683-4, then the record supports having to resolve that issue because under the clearly established... One more quick question since your time has expired. Why didn't the fact that his counsel had the telephone number of Michael Smith in Arizona, that came up in the Brady issue, why didn't that give counsel the ability to speak directly to Michael Smith? Your Honor, I believe that's a misreading of the record. Trial counsel did not have the phone record. Well, he had a log of all the telephone calls that were made. Did that not include the number for Mr. Smith in Arizona? It's not clear. The phone numbers were had by the detective because those were the numbers. What they had were the numbers. They hid Michael. They hid Michael and they had the phone numbers that he called when he was being hidden by the police. Your position is he was not accessible from the number that was provided? No, in the deposition defense counsel asked Michael specifically, who said he would be there at trial, if we send our investigator to speak with you, will you speak with him? The prosecution refused to allow him to answer and said, we're not telling you where he's at. It was the day of trial when defense counsel learned for the first time that Michael wasn't there. I think your time is up. Thank you. You will have your rebuttal time. Yes. Thank you, Judge. Good morning, Your Honors. Good morning. Catherine Mullen on behalf of Warden Bagley, the respondent in this case. Your Honors, there are three interrelated claims that the defendant has brought to this court. The first is namely a trial court error in the context of a confrontation clause violation by the admission of Michael Smith's deposition. The second is a prosecutorial misconduct claim. And the third is a Brady claim. However, all three of these claims largely revolve around the Geiger affidavit, which was raised in the defendant's petition for post-conviction relief in the state court. Your Honors, beginning with the first claim, the confrontation clause, I would like to point out that both parties agree that Ohio v. Roberts is the controlling law. And to the extent that we deal with the idea that Michael's statement was unreliable or not trustworthy because he was a co-conspirator, I'd point this court directly to the language of Roberts, which found that it's the prior proceeding, the fact that there's a preliminary hearing where there's cross-examination, a deposition where there's cross-examination, or a prior trial where there's cross-examination, it's the process itself that provides the reliability. And that's at page 73 of Ohio v. Roberts. And Roberts did not, of course, create that. That came before it in California v. Green and also, again, in the Mancusi case. So Michael's testimony in the deposition was absolutely reliable. In terms of the unavailability of Michael, the Ohio Supreme Court found that Michael was unavailable and that the state had made good faith efforts to secure his attendance. There is testimony in the record available for this court's review by Detective Beeman of Cleveland and Detective Leiby of Elyria and their efforts to secure his attendance, which included surveillance at last known addresses, constant contact and communication with his ex-wife. There were two arrest warrants out for him. The first time he was actually arrested and he was held in the Cuyahoga jail for a period of days before he was released. There was a second arrest warrant issued after that when he had, again, failed to report to his probation officer. All of these efforts, in consideration of the precedent that this court looks at, clearly demonstrate a good faith effort on the prosecution to obtain his presence. If you look at Ohio v. Roberts, it actually is strikingly similar. And in that case, there was an allegation that the witness had went to Arizona and then to California and nevertheless, under any circumstances, was unavailable. In the Mancusi case, I believe the witness was in Sweden. But there are certainly, you know, this case demonstrates that we did not know where he was. We tried to find him. We made every effort that we could to find him. And when we couldn't, that's when we sought to admit his deposition to the trial. The trial court held a hearing on that. The original defense counsel and the defense counsel for the trial both had opposed its admission. The trial court determined that those efforts were made in good faith, and that has been affirmed by every court since then before we got to this case. The defendant argues that he did not have access to the Arizona phone numbers. That's contradicted specifically by the record. Detective Beeman provided it, the phone number that Michael called in Arizona. Detective Beeman provided that. That is at page ID 5025, and the defendant actually marked those as exhibits for the purposes of the hearing as defendants exhibit AA and BB. Moving to the misconduct claim, the district court found that this claim was defaulted and then did an alternative merits review. The court, again, as Mr. Rossman points out, the court looked at the last court state of record on this issue, which was the Court of Appeals, which had found that the claims were barred by res judicata. The Geiger affidavit, although it may arguably constitute evidence outside of the record, under Ohio law, needs to satisfy cogent evidence. It needs to be competent, relevant, and material to the issue. The trial court, in making its determination, found that the defendant was not prejudiced by the Geiger affidavit. And I would argue that the idea that the finding by the trial court that the defendant was not prejudiced by the Geiger affidavit shows that he fails to satisfy the Brady prongs because you have to show that it was material and you have to show that it would have affected the outcome, and he didn't do that. And when he didn't do that, he didn't overcome the res judicata bar, much like he doesn't overcome a default in this case. What about the argument that your opposing counsel makes that on the first post-conviction proceeding, the Court of Appeals erred because it simply said there's nothing outside the record, and the Geiger affidavit was, in fact, outside the record and was, in fact, presented? The record that was presented to the Court of Appeals, according to the Court of Appeals' opinion, they could not find that evidence inside the record that the court had. And it's the defendant's burden, and it's always been the defendant's burden because he's the appellant, to make sure that the record is complete in the court, and the court decided it based on the evidence that it had. And because there was no evidence there, the court found that it was res judicata, which is, again, even going back to the trial court's decision, though, ultimately finding that the defendant couldn't overcome the evidence in the record because there was no evidence that he was prejudiced, the trial court did, maybe without using the term res judicata, essentially applied both a procedural and then a merit review. And because the Geiger affidavit was not apparently part of the Court of Appeals' record, the Court of Appeals decided it solely on the res judicata aspect. But the defendant argues that he should be entitled to a remand because of this, because the record maybe was incomplete, but he's not entitled to that. This court looks at whether or not the state court decisions were arbitrary or unreasonable or unconscionable, and there's nothing here to suggest that. The defendant is not entitled to a remand under pinholster to reopen an already adjudicated claim, which this was. This court has the ability, of course, to decide whether or not the state court's got it wrong, and there was a constitutional violation, and in that case, the defendant's entitled to relief. But he's not, in this case, entitled to relief, where the state court, the trial court, made a finding that there was no merit, essentially, to this Geiger affidavit. Then the argument became procedurally defaulted because he didn't properly follow through with his rights when he got to the Court of Appeals. The defendant also argues, to some extent in his brief, but it sounds like maybe he has now abandoned that argument, that there was a lack of judicial oversight and that there's other problems inherent with the process of the deposition. Those problems do not go to the Ohio v. Roberts test. They have no bearing on the Ohio v. Roberts test. Roberts is concerned about unavailability and reliability. The fact that the deposition maybe didn't comply with Criminal Rule 15 perfectly, the fact that there was one, I think, instance of hearsay in the record, those don't affect the reliability of Michael's deposition. So there was no error in the admission of that. Why don't they affect the reliability or the trustworthiness? Because they go to the issues of the procedure of the deposition itself and not to the truthfulness of the testimony, which is the concern of the Ohio v. Roberts test. They don't affect the fact that what Michael said is true and credible. There was no finding. The district court, and I believe, as you asked Judge Schranch, there was no, I would argue, finding by the Ohio Supreme Court that Michael was a co-conspirator. That statement was made in the course of a decision about the admissibility of Danny Smith's statements. Danny Smith was an indicted co-conspirator. There is a large difference between being indicted and charged as a co-defendant and the one line in the Ohio Supreme Court's opinion. Michael, by all accounts, never exited the vehicle. He didn't participate in the homicide. Unlike Danny, who the testimony showed took actions in furtherance of the conspiracy afterwards by approaching Ron Lally at the Mr. Hero restaurant, by threatening Ron Lally's ex-wife, by threatening Ron Lally's family. There was evidence clearly to support Danny's participation, but not Michael. Michael was, by all accounts, an unwilling participant in this offense. The argument that Michael was present in the bragging event where people were bragging about killing the decedent, was he present? I believe he was. Was he not? I believe he was present, but I don't believe it was attributed. Any of the statements I don't believe were attributed to him, although if the record contradicts that, I would, of course, rely on the record. But I don't recall any bragging statements that were attributed to Michael afterwards, but I do know that he was at, I believe it was, Danny's apartment afterwards during that communication. Your Honors, I believe, as I mentioned, I think all of these claims are interrelated, and if you look at the Geiger affidavit, it's just under state law, it's not competent evidence, and it certainly wouldn't have been competent evidence to overcome the efforts of the prosecutor, the efforts of the detective that were highlighted in the record, and then again found a factual finding made by the Ohio Supreme Court. You can't overcome res judicata just because you attach an affidavit, and you're not entitled to a hearing just because you attach an affidavit. The affidavit has to be compelling. It has to call into question the evidence that has been presented at the trial, and the Geiger affidavit simply does not do that. It simply doesn't change the holding and the finding of the Ohio Supreme Court. Michael was, by all accounts, unavailable. The state went to great efforts to find him. The state did end up using Michael to testify against the two other indicted co-defendants, against Danny and Mr. Jalowiek. Danny Smith was acquitted, but the evidence, even as Michael presented it, was that Danny was not there when Mr. Lally was actually killed, and that, I believe, is likely why he was acquitted. Michael's deposition testimony and a testimony in the Jalowiek trial, the district court noted, were substantially similar. Mr. Jalowiek was convicted, and this court has affirmed the denial of his habeas relief. Remind me of the timing relationship between Stan's trial and Mr. Smith's. That is a good question, Your Honor. I know it came afterwards, but I don't know the date of the Jalowiek trial. Your Honor, we would ask that this court affirm the decision of the district court denying habeas relief. I would also note that in response to the first argument that the trial court committed error, the Geiger affidavit was not admitted as part of that argument until the defendants traverse. And because of that, the district court found, relying on this court's prior precedent, in Tyler v. Mitchell, that she was within her bounds for not considering it, although, of course, she did go through and make an alternative and made a review of that. Unless there is any further questions, the warden is prepared to rest. Any further questions? Thank you, Your Honor. Thank you. I'd like to make, I think there's four or five points in rebuttal. The Ohio Supreme Court's decision on direct appeal is not the last reason decision on the Confrontation Clause claim. I'm sorry, could you speak up? Yes, I'm sorry. The Ohio Supreme Court's decision on direct appeal is not the last reason decision for the Confrontation Clause claim. That is, as Yulst v. Nunemaker makes clear, the post-conviction court of appeals decision. The reason, in fact, this is a case where counsel did exactly what he's supposed to do. The Ohio Supreme Court on direct appeal went through the evidence in the record, which it's limited to, and said there's nothing here to overcome, but we see as good faith by the prosecutor. So defense counsel goes out in post-conviction and gets the Geiger affidavit that says, I spoke to Michael Smith at Danny Smith's trial. He told me that the state of Ohio sent him out to Arizona, and when the police saw that I was talking to him about this, they broke up that conversation. I would also note that because my worthy opponent brings up Pinholster, in habeas, in Record Entry 110-1, we brought an affidavit from Michael Smith. Pinholster came down in the course of this litigation. Michael Smith provided an affidavit to habeas counsel saying, and actually wrote in corrections, on more than one occasion, I was in touch with Detective Leiby and the state, and they told me on more than one occasion that I didn't have to come to trial because they had my deposition. That warranted some discovery, but Pinholster came down in the middle of our litigation, and so we can't consider it. What I'm saying, though, is that in state post-conviction, when the state post-conviction, this argument that the habeas court made, saying, well, I've looked at this affidavit and it's not competent evidence, that's not a call for the habeas court. That is a call that the post-conviction trial court gets to make as a matter of state law. In state post-conviction, Ohio Supreme Court law, State v. Calhoun, makes very clear affidavits in state post-conviction should be deferred to, but the trial court, the post-conviction trial court, may, in an act of sound discretion, reject it as not competent, reject it because, say, it's hearsay or not believable, but we leave that to the state post-conviction trial court because that's the court that heard the trial. What have you offered to show that there should have been a hearing to show that there was prejudice to your client by not having Michael Smith physically testify? Under the Confrontation Clause claim, if the declarant is not constitutionally unavailable, we win, regardless whether it's reliable, regardless what he said, we could do a harmless error test. But under harmless error, we don't look at, we take the deposition out completely. But your challenge to his unavailability is the Geiger affidavit, right? Yes. That's it. Is there anything else in the record? Well, there's Michael Smith saying, I asked for a bus ticket out of here. In other words, Judge, post-conviction proceedings are not won on the pleadings. They're won at an evidentiary hearing. If you create a, if you state a constitutional claim and you create a material factual dispute, and I would note again that the prosecution in its response of pleading at this point said the defense has offered evidence outside the record in the Geiger affidavit and said we dispute its credibility. And that is, in itself, is enough, that's not a determination. Then we have an evidentiary hearing to determine whether or not Michael Smith was constitutionally unavailable. That's a, under finality and comity, that's a determination that is primary to the Confrontation Clause analysis. You must first have. Your time is up. We appreciate your arguments. Judge Stranz, I do have one question. Mr. Rossman, what do you say to your opposing counsel's statement that you're essentially assuming that the Ohio Court of Appeals was in error when they overlooked this affidavit. The state says they weren't in error. The defense counsel apparently failed to put the affidavit into the record that the State Court of Appeals was considering. So how do we, in your view, how do we sort that out? A couple things, Your Honor. First of all, I think it's telling that the post-conviction trial court, which the Court of Appeals necessarily, that's the decision they need to review, said there is evidence outside the record. The post-conviction Court of Appeals said, counsel talks about it, but we can't find it. They didn't say it wasn't there. They said they couldn't find it, but rather than, and. Wait, wait. What does, what does we can't find it mean other than it isn't there? Your Honor. It could mean that, Your Honor, the way the Cuyahoga County Court of Appeals does business, they may have just lost. It was clearly in the record for the post-conviction trial court. The record goes up, and if you read the race judicata ruling, the race judicata doesn't say the affidavit is incompetent, and doesn't dismiss it. What it says is, counsel did not attempt to support this with evidence outside the record. That was the race judicata. Counsel did not attempt to do it, and the trial court's decision clearly says they did. Why the court didn't just come back and say, you're talking about it, we can't find it, provide it to us again, I don't know. But under Greer v. Mitchell and Hill v. Mitchell, when this court is assessing the federal law of procedural default, under Maupin, it has to first look and see, under Maupin, whether the petitioner did, in fact, not follow the state rule. In this case, it's clear, based on reading the post-conviction trial court, that he did follow the state rule, that there was evidence outside the record, the state acknowledged it was evidence outside the record, and under state law, you have to afford him a hearing. I would suggest that pursuant to Greer's... You've answered the question. Thank you. All right. Thank you, Your Honor. Thank you both for your arguments. Your case will be taken under advisement. Thank you.